UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK _____

| | |
|---|---|
| DOMINIKA ZAKRZEWSKA, | **MEMORANDUM OF LAW** |
| Plaintiff, | |
| v. | **Civil Action No.**<br>**06 Civ. 5463 (LAK)** |
| THE NEW SCHOOL, AND KWANG-WEN PAN, | **Electronically Filed** |
| Defendants. | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
THE NEW SCHOOL'S MOTION FOR SUMMARY JUDGMENT**

WARD NORRIS HELLER & REIDY LLP
300 State Street
Rochester, New York 14614
(585) 454-0700

*Attorneys for defendant*
*The New School*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................... ii

**PRELIMINARY STATEMENT** ........................................................................................ 1

**RULE 56.1 STATEMENT** ................................................................................................. 2

**ARGUMENT** ...................................................................................................................... 4

   POINT I – THE *FARAGHER/ELLERTH* DEFENSE MANDATES
       DISMISSAL OF PLAINTFF'S HARASSMENT CLAIMS
       AGAINST THE NEW SCHOOL .................................................... 4

       The New School Satisfies All Elements of
       *Faragher/Ellerth* ........................................................................ 4
       The *Faragher/Ellerth* Defense is Available
       to defeat NYCHRL Claims......................................................... 10

   POINT II – *RESPONDEAT SUPERIOR* PROVIDES NO BASIS
       FOR THE NEW SCHOOL'S POTENTIAL LIABILITY
       IN THIS CASE ............................................................................... 14

   POINT III – PLAINTIFF'S RETALIATION CLAIM AGAINST
       THE NEW SCHOOL ALSO FAILS.............................................. 16

**CONCLUSION**  ............................................................................................................ 23

## TABLE OF AUTHORITIES

<u>**CASES:**</u>                                                                                      <u>**PAGE**</u>

*Abreu v. Suffolk County Police Dept.,* 2007 WL 608331 (E.D.N.Y. Feb. 23, 2007)..................18

*Adorno v. Correctional Services Corp.,* 312 F. Supp. 2d 505
    (S.D.N.Y. 2004) ...................................................................................................................14

*Barua v. Credit Lyonnais,* 1998 WL 915892 (S.D.N.Y. December 30, 1998))...........................9

*Brewster v. City of Poughkeepsie*, 447 F. Supp. 2d 342 (S.D.N.Y. 2006)...............................5, 6

*Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 S. Ct. (1998)..............................................passim

*Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53,
    126 S. Ct. 2405 (2006) ................................................................................. 20, 21, 23

*Caridad v. Metro-North Commuter Railroad,* 191 F.3d 289 (1999) ...........................................5

*Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000)...........................................................10

*Dayes v. Pace Univ.*, 2000 WL 307382 (S.D.N.Y. May 24, 2000) .............................................9

*Donato v. Plainview-Old Bethpage Cent. School Dist.,* 96 F.3d 623
    (2d Circ. 1996) ...................................................................................................................19

*Eichler v. American Int'l Group*, 2007 WL 963279 (S.D.N.Y. March 30, 2007) .......................9

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) .........................................................passim

*Father Belle Community Ceter v. New York State Div. of Human Rights*
    *on Complaint of King*, 221 A.D.2d 44 642 N.Y.S. 2d 739 (4th Dept. 1996)..........................14

*Feingold v. New York,* 366 F.3d 138 (2d Cir. 2004)..................................................................15

*Ferraro v. Kellwood Co.*, 440 F.3d 96 (2d Cir. 2006) ..................................................4, 5, 10, 13

*Forrest v. Jewish Guild for the Blind,* 3 N.Y.3d 295, N.Y.S.2d 382 (2004) ..............................15

*Glen v. Paulson,* 234 Fed. Appx. 5 (2d Cir. 2007) ...................................................................21

*Heskin v. Insite Advertising, Inc.,* 2005 WL 407646 (S.D.N.Y. Feb. 22, 2005 ...................14, 15

*International Health Care Exchange, Inc. v. Global Healthcare*
   *Exchange, LLC,* 470 F. Supp. 2d 345 (S.D.N.Y. 2007) ........................................................ 14

*Karibian v. Columbia University,* 14 F.3d 773 (2d Cir. 1994) .................................................... 18

*Kemp v. Metro-North R.R.,* 2007 WL 1741256 (S.D.N.Y. June 14, 2007) .......................... 17, 19

*Leopold v. Baccarat, Inc.,* 239 F.3d 243 (2001) ........................................................................ 6

*Longmire v. Wyser-Pratte,* 2007 WL 2584662 (S.D.N.Y. Sept. 6, 2007) .................................. 15

*Mack v. Otis Elevator Co.,* 326 F.3d 116 (2003) ...................................................................... 4, 5

*McPherson v. NYP Holdings, Inc.,* 2005 WL 2129172 (E.D.N.Y. Sept. 1, 2005)
   *aff'd* 227 Fed. Appx. 51 (2d Cir. 2007) ............................................................................ 11, 12

*Moses v. City of New York,* 2007 WL 2600859 (S.D.N.Y. Aug. 28, 2007) ................................ 21

*Muraj v. UPS Freight Services,* 2006 WL 2528538 (W.D.N.Y. Aug. 31, 2006) ....................... 18

*Pace v. Ogden Services Corp.,* 257 A.D.2d 101 (3rd Dept. 1999) ............................................. 11

*Patane v. Clark,* 508 F.3d 106 (2d Cir. Nov. 28, 2007) ......................................................... 10, 22

*Pennsylvania State Police v. Suders,* 542 U.S. 129, 124 S. Ct. 2342 (2004) ............................. 13

*Petrosino v. Bell Atlantic,* 385 F.3d at 220 (2d Cir. 2004) ...................................................... 5, 10

*Ponticelli v. Zurich American Ins. Group,* 16 F. Supp. 2d 414
   (S.D.N.Y. 1998) ................................................................................................................. 15, 17

*Priore v. New York Yankees,* 307 A.D.2d 67, 761 N.Y.S.2d 608 (1st Dept. 2003) .................... 18

*Pugliese v. Long Island R.R. Co.,* 2006 WL 2689600 (E.D.N.Y. Sept. 19, 2006) ..................... 12

*Randall v. Tod-Nik Audiology, Inc.,* 270 AD2d 38 (1st Dept. 2000) .......................................... 11

*Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170 (2d Cir. 1996) ...................................................... 17

*Rikhy v. AMC Computer Corp.,* 2003 WL 1618529 (S.D.N.Y. 2003) ........................................ 15

*Ross v. Mitsui Fudosan, Inc.,* 2 F. Supp. 2d 522 (S.D.N.Y. 1998) ............................................. 14

*Sardina v. UPS, Inc.,* 2007 WL 4105811 (2d Cir. Nov. 20, 2007) ............................................. 11

*Scott v. Cellco Partnership,* 2007 WL 1051687 (S.D.N.Y. Apr. 3, 2007) ................................. 21

*Sewell v. Chao,* 2008 WL 274880 (D.D.C. Feb. 1, 2008)............................................................21

*State Div. of Human Rights on Complaint of Greene v. St. Elizabeth's Hosp.,* 66 N.Y.2d 684, N.Y.S.2d 411 (1985)....................................................................15, 17

*Totem Taxi, Inc. v. NYS Human Rts. Appeal Board,* 65 N.Y.2d 300, 491 N.Y.S.2d 293 (1985) .............................................................................................14

*Wiley v. Glassman,* 511 F.3d 151 (D.C. Cir. 2007) .....................................................................21

*Woods v. Enlarged City School Dist. of Newburgh,* 473 F. Supp. 2d 498 (S.D.N.Y. 2007) ............................................................................................................19

*Zolondek v. Worldwide Flight Services, Inc.,* 2006 WL 4100886 (E.D.N.Y. Aug. 28, 2006) .........................................................................................22

## <u>STATUTES</u>

Title VII 42 U.S.C. § 1981 ("Title VII")............................................................10, 11, 12, 14, 20

New York Executive Law ("NYSHRL") N.Y. Exec. Law § 290 et seq. ("NYSHRL") ......10, 12

N.Y. City Admin. Code §8-107 ("NYCHRL").......................................................................3, 13

## PRELIMINARY STATEMENT

Plaintiff commenced this diversity action alleging that she was sexually harassed by co-defendant Kwang-Wen Pan ("Pan"), while both were employed by The New School (occasionally "New School," the "School" or the "University"), and that following her report of this alleged harassment to the School, she was retaliated against by Pan. The New School now moves for summary judgment dismissing all claims against it, because, among other reasons: (1) the New School had no notice of the allegedly offending conduct for almost two years; (2) the New School did not in any way condone, support, ratify or encourage the alleged harassment at any time; (3) the School took prompt, decisive and effective remedial action immediately upon learning of the alleged harassment; (4) plaintiff was completely unaware of the allegedly retaliatory conduct by Pan; (5) the New School was completely unaware of the allegedly retaliatory conduct by Pan; (6) plaintiff suffered no adverse employment action as a result of the allegedly retaliatory conduct by Pan; (7) Pan's allegedly retaliatory conduct was not condoned, supported, ratified or encouraged in any way by the New School; (8) the allegedly retaliatory behavior was undertaken not for the benefit of the School, but solely for the personal benefit of Mr. Pan; (9) Pan was not supervising plaintiff at the time the allegedly retaliatory behavior occurred; and (10)  Pan apparently had no retaliatory motive with respect to plaintiff's employment in monitoring plaintiff's computer usage, because he confirmed that his surreptitious, undisclosed actions were taken not to effect her job but to protect himself should plaintiff commence legal action against him.

For these reasons, discussed in detail below, the New School's motion in all respects should be granted, and plaintiff's claims against it should be dismissed.

## RULE 56.1 STATEMENT

The salient facts are introduced in the Affidavit of Keila Tennent, the Affirmation of Thomas S. D'Antonio, and numerous documents, including excerpts from deposition testimony of various witnesses, all of which are included in an accompanying Appendix of Exhibits. For the convenience of the Court, the key facts are summarized in the School's Rule 56.1 Statement, and will be highlighted briefly below.

Plaintiff enrolled as a freshman at the New School in the fall of 2002. She was hired in April 2003 to work part-time in The New School's Print Output Center located within its Academic Computing Center. Defendant Pan worked in The New School's Academic Computing Center at that time.

When plaintiff began working in the Computing Center, the New School had in place an extensive policy against sexual harassment which was promulgated to staff and students, and was available on The New School's website. This policy included a strict prohibition against any romantic involvement between staff and students. This policy also included a two-step procedure whereby an alleged victim of harassment could seek help from The New School. Plaintiff had knowledge of this policy, as did Pan.

During the summer of 2003, plaintiff and Pan began corresponding via electronic mail, and enjoyed what appeared to be a cordial, friendly course of communication for a significant period of time. For instance, on July 3, 2003, plaintiff e-mailed Pan her personal cellular telephone number telling him that he could contact her at any time. In addition, over the following months, the pair shared conversations, photos, music, movies, dinner and a night at the opera. The exchange of electronic correspondence continued until at least February 2005. During this time, plaintiff never alerted The New School of any alleged misconduct by Pan,

2

and as a result, The New School had no knowledge of Pan's allegedly inappropriate actions toward plaintiff. Plaintiff alleges that at some point, Pan's communications with her became inappropriate.  Plaintiff does not allege that Pan took any tangible employment action against her.

In May 2005, almost two years after plaintiff and Pan initiated their personal communications, plaintiff contacted The New School's human resources department about Pan's alleged sexual harassment.  Plaintiff indicated to Keila Tennent, The New School's Associate General Counsel, and Carol Cantrell, Senior Vice President of Human Resources, that she wanted Pan's questionable conduct to stop.  The New School took immediate steps to investigate these allegations, which resulted in the discontinuation of any inappropriate communications between plaintiff and Pan.  Moreover, Pan was required to participate in specific training on The New School's sexual harassment policy and was told that should his inappropriate actions toward plaintiff continue, he would be terminated. Following this investigation, Pan no longer supervised plaintiff.  In addition, Pan was instructed on the University's policy against retaliation, and told that he should in no way retaliate against plaintiff as a result of her complaints.

Upon learning of the resolution of The New School's investigation into plaintiff's allegations, plaintiff communicated to Ms. Cantrell and Ms. Tennent a general dissatisfaction with the outcome.  Plaintiff was reminded of a second step in The New School's complaint procedure, but plaintiff did not follow that avenue for redress.  Instead she initiated legal action against Pan and The New School for sexual harassment under N.Y. City Admin. Code §8-107.

At some point following The New School's investigation into plaintiff's complaints, Pan apparently began covertly monitoring plaintiff's e-mail and internet usage on her

3

University-owned computer while she was working in the Computing Center.  No person had

any knowledge of Pan's actions, including plaintiff or The New School.  Further, this course of

action was in no way authorized or condoned by The New School.  Instead, Pan was entirely

motivated by his personal agenda of collecting information in anticipation of a possible

litigation by plaintiff.  After acquiring this information in the course of this litigation, plaintiff

amended her complaint to add a cause of action for retaliation under the New York City Human

Rights Law.

<u>**ARGUMENT**</u>

**POINT I**

**THE *FARAGHER/ELLERTH* DEFENSE MANDATES DISMISSAL OF PLAINTIFF'S HARASSMENT CLAIMS AGAINST THE NEW SCHOOL**

<u>**The New School Satisfies All Elements of Faragher/Ellerth**</u>

In *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998) and *Burlington*

*Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998), the Supreme Court held that an

employer may defend itself against liability for sexual harassment committed by a supervisor.

The holdings in these two cases created a defense to liability for employers who can make the

requisite showings required under those cases and their progeny.  As the Second Circuit has

explained, the *Faragher/Ellerth* defense is available in those situations when the harasser acts

in a personal capacity and seeks to exploit that supervisory position for personal gain.  *Ferraro*

*v. Kellwood Co.*, 440 F.3d 96, 101 (2d Cir. 2006).

The *Faragher/Ellerth* defense involves a multi-pronged test.  First, an employer must

show that no tangible employment action "such as discharge, demotion, or undesirable

reassignment" was taken during the course of alleged harassment.  *Ellerth*, 524 U.S. at 765.

*see also Mack v. Otis Elevator Co.*, 326 F.3d 116, 124 (2d Cir. 2003) (tangible employment actions include a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."); *Caridad v. Metro-North Commuter Railroad*, 191 F.3d 289, 294 (2d Cir. 1999) (tangible employment decision requires an "official act of the enterprise" or a "company act") (citations omitted).

Here, that threshold requirement is met because no "company action" was taken toward plaintiff during the period she allegedly was harassed by Pan.  Instead, Pan's acts, as alleged and as demonstrated during discovery, were entirely personal and not work-related, including such things as personal conversations, requests to eat or go out together, or Pan's conferring upon plaintiff small gifts of food or other things. (Rule 56.1 Statement at ¶ 15).  Their contacts in this regard were private, and did not involve her work or work-related responsibilities. (*Id.*). There is no claim, nor any showing, that she was terminated, demoted, reassigned or that her working terms or conditions were unfavorably altered.

The *Faragher/Ellerth* defense involves two elements beyond this threshold showing. First, an employer must establish that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." Second, an employer must demonstrate "that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, *supra*, 524 U.S. at 807; s*ee also Ferraro v. Kellwood Co.*, *supra*, 440 F.3d at 101; *Petrosino v. Bell Atlantic*, 385 F.3d 210 (2d Cir. 2004).  One way an employer may demonstrate the exercise of reasonable care, and thus may establish the first element of the defense, is to "show that they had an anti-harassment policy in place." *Mack*, *supra*, 326 F.3d at 128. "The existence of an

anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of the [*Faragher/Ellerth*] defense." *Brewster v. City of Poughkeepsie*, 447 F. Supp. 2d 342, 353 (S.D.N.Y. 2006) (*quoting Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001)).

The second element of the *Faragher/Ellerth* defense, the failure of the employee reasonably to avail herself of the grievance procedure, requires that an employee must attempt to remedy the situation through the proper administrative channels, thereby putting the employer on notice of the alleged harassment.  In *Brewster, supra,* 447 F. Supp. 2d at 354, Judge McMahon explained that "an employee who simply fails to avail herself of grievance procedures will be deemed to have acted unreasonably" unless the employee provides a reasonable explanation for the failure.  Because "[a]n employer cannot combat harassment of which it is unaware," the failure of the employee to effectively access available internal remedies will be fatal to her claim. *Id.* at 356.

The undisputed evidence in this case demonstrates that The New School has met both elements of the *Faragher/Ellerth* defense.  First, it took reasonable care to prevent and quickly remedy the alleged misconduct through an extensive published policy against sexual harassment promulgated to all of its employees and students. (Rule 56.1 Statement at ¶¶ 6-11). The policy itself was, and is, available on The New School's website, and is accompanied by "Guidelines for Dealing with Issues of Sexual Harassment" which outlines the steps to initiate a sexual harassment complaint.  (*Id.* at ¶ 14).  Plaintiff acknowledged that she was aware of this policy, and indeed she availed herself of it.  (*Id.* at ¶ 12).  When she did so, in May 2005, that was the first time the School was made aware of the allegedly offensive conduct, and within a matter of weeks the investigation was completed and the problematic behavior was effectively

addressed.

As the Record proof demonstrates, in early May of 2005 plaintiff first contacted Carol Cantrell, the School's Senior Vice President of Human Resources, Ms. Cantrell immediately scheduled an appointment with plaintiff. (Rule 56.1 Statement at ¶ 24). Both Ms. Cantrell and Keila Tennent, counsel for the School, met with plaintiff, provided her plaintiff with an additional copy of the harassment guideline policies, and discussed the alternatives available to pursue her grievance. (*Id.* at ¶ 25). Plaintiff chose the "informal" step in the grievance procedure, and related her objective—to have the problematic behavior by Pan stopped. (*Id.* at ¶ 26). Afterward, Ms. Tennent followed up with plaintiff after she had failed to supply the School with certain e-mails she discussed during the first meeting, secured and reviewed those e-mails, interviewed one witness identified by plaintiff, attempted to contact another witness (but could not do so because plaintiff had furnished inaccurate contact information), met with Pan's supervisor and then met with Pan. (*Id.* at ¶¶ 28-34). At this meeting with Pan, on June 14, 2005, Pan admitted he had made personal contact with plaintiff, admitted that he understood such personal contact to have been inappropriate, and agreed not to make such contact in the future. (*Id.* at ¶ 33). At that time, Ms. Tennent and Ms. Cantrell referred Pan to The New School's Employee Assistance Program for counseling and training, directed Pan to cease immediately all personal interactions with plaintiff, and took steps to ensure that Pan was not in any supervisory position with respect to plaintiff. (*Id.* at ¶ 36-37). Ms. Tennent also spoke with Pan's supervisor, informed her of the disposition of the matter, and requested that she pay particular attention to Pan's behavior with employees. Pan, finally, was informed that he could not retaliate against plaintiff for making the complaint, and that if there were future problems in this regard, he would be terminated.

7

The New School scheduled a follow-up meeting with plaintiff following the completion of the investigation.  She failed to appear for the first such meeting, but when she did subsequently meet with Ms. Tennent and Ms. Cantrell, she was told of the outcome of the investigation and of the remedial actions taken to ensure that the offending behavior did not recur. (Rule 56.1 Statement at ¶¶ 40-41).  She admitted this was the remedy she had requested during her May 2005 meeting, but expressed a concern that this remedy now was not enough for her.  (Rule 56.1 Statement at ¶¶ 42-43).  She claimed that she was upset by Pan's behavior and was told of additional steps she could pursue in the grievance process if she was dissatisfied with the disposition effected by Ms. Tennent and Ms. Cantrell.  (*Id.* at ¶¶ 45-46).  Ms. Cantrell and Ms. Tennent also informed plaintiff that if any problematic conduct recurred, she should contact them. (*Id.* at ¶ 46).  By plaintiff's own admission, Pan ceased all allegedly inappropriate contacts with her following his June 14, 2005 meeting with Ms. Cantrell and Ms. Tennent.  He no longer sent her non-work-related e-mails, called her, asked her out or brought her any food at work. (Rule 56.1 Statement at ¶ 43).  This cessation of personal contacts was exactly the resolution plaintiff had sought.  (Rule 56.1 Statement at ¶ 43).

In this case, it also is clear that plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher, supra*, 524 U.S. at 807.  Plaintiff acted unreasonably in waiting almost well over a year to report the allegedly harassing conduct, and she again acted unreasonably subsequent to the time she expressed dissatisfaction in the outcome of the informal review process by refusing to participate in the additional internal processes available to her.  Her excuses for failing to report the allegedly offensive behavior—that she was "too ashamed of what was going on" and was afraid that it "will cause many other problems for other people" (Rule 56.1

Statement at ¶ 23) are not only called into serious question by her extensive electronic correspondence with Pan, but are also insufficient under the law.  An alleged unwillingness to "be tagged as a complainer," not to "cause any waves" or "cause any major commotion" is simply not an adequate justification for delay in reporting alleged harassment. *See Eichler v. American Int'l Group*, 2007 WL 963279 at * 12 (S.D.N.Y. March 30, 2007) and cases cited therein.

Moreover, during the time period in question, notwithstanding her knowledge of the procedure, plaintiff continued to engage in private conversations with Pan; conversations that encouraged continued personal communications between them. (Rule 56.1 Statement at ¶¶ 15-20).   From 2003 until early 2005, plaintiff continued to send personal e-mails to Pan on a regular basis. (*Id.*).  Plaintiff sent Pan her personal phone number as one of her "special people" and told Pan that he could always call her. (*Id.* at ¶ 17).  On June 30, 2004, plaintiff purposefully chided Pan writing, "why aren't you respond to my e-mail" and requested that Pan to write her back. *Id.* at 19.  And on June 24, 2004, plaintiff told Pan that "you are one of my few best friends ☺."  (Rule 56.1 Statement at ¶ 18).  As late as February 2, 2005, plaintiff sent an e-mail to Pan thanking Pan for lunches he had provided, complete with seven "smiley faces." (*Id.* at ¶ 20).   After nearly *two years* of steady communications, plaintiff for the first time complained of the alleged "harassment" by Pan. Her conduct up until that time certainly calls into question the *bona fides* of her allegations that she found Pan's contacts with her to be harassment, but in any event her delay in bringing her alleged concerns to the attention of The New School "breaches her 'obligation of reasonable care to avoid harm.'" *Eichler, supra*, 2007 WL 963279 at *11 *(quoting Barua v. Credit Lyonnais-U.S. Branches*, 1998 WL 915892, *4 (S.D.N.Y. December 30, 1998)).  *See also Dayes v. Pace Univ.*, 2000 WL 307382 (S.D.N.Y.

9

May 24, 2000) (one year delay in making complaint unreasonable as a matter of law).

Similarly, plaintiff has no legitimate justification for her failure to use the available complaint procedures after The New School confronted Pan and the behavior in question stopped. Had plaintiff been dissatisfied she could have pursued the second stage of the process, and indeed she took steps to do so (albeit three months after she was advised by Ms. Tennent and Ms. Cantrell of that option). (Rule 56.1 Statement at ¶¶ 47-50)  She abruptly terminated that process, and instead initiated legal action.  Her conduct, therefore, squarely supports the application of the *Faragher/Ellerth* defense, and this action should be dismissed on this basis.

### The *Faragher/Ellerth* Defense is Available to defeat NYCHRL Claims

Plaintiff may argue that, in consciously avoiding any claim other than one under the New York City Human Rights Law ("NYCHRL"), she should avoid application of *Faragher/Ellerth*.  She is mistaken in that view.  Federal courts, including numerous judges in the Southern District, have applied the *Faragher/Ellerth* defense to dismiss as a matter of law claims brought under not only Title VII, but the New York Executive Law ("NYSHRL") and the NYCHRL.  These courts have begun the analysis with the settled proposition that "New York Courts examine claims under [NYHRL and NYCHRL] with the same analytical lens as the corresponding Title VII-based claims." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. Nov. 28, 2007); *accord, Petrosino, supra*, 385 F.3d at 220 n. 11 ("Because [plaintiff's] employment discrimination claims under state and municipal law are governed by the same standard as her Title VII claims, we need not discuss them separately"); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565, n. 1 (2d Cir. 2000).

*Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006) is a recent, instructive case that squarely supports The New School's position on this motion.  *Ferraro* was a diversity

action under the NYSHRL and NYCHRL for discrimination and a hostile work environment. The Second Circuit began its analysis by acknowledging that "[t]he standard for recovery under [NYSHRL] is in accord with the federal standards under [Title VII], and the human rights provisions of New York City's Administrative Code mirror the provisions of [NYSHRL]" *Id.* (citations omitted). The Court further commented, "New York courts have consistently looked to federal caselaw in expounding the Human Rights Law" *Id.* (citations omitted). Accordingly, the Court applied *Faragher/Ellerth* to dismiss on summary judgment both the NYSHRL and NYCHRL claims.

Even more recently, in *Sardina v. UPS, Inc.*, 2007 WL 4105811, *2 (2d Cir. Nov. 20, 2007) (Summary Order), the Second Circuit found that defendant employer could successfully assert the *Faragher/Ellerth* defense in seeking summary judgment dismissing *all* plaintiff's discrimination claims, including those asserted under the NYCHRL. *Id.* And in *Eichler*, 2007 WL 963279, *supra*, Magistrate Maas applied the *Faragher/Ellerth* defense and granted summary judgment in a hostile work environment claim exclusively involving State and City anti-discrimination statutes. *Id.* at *7-8; *see also Randall v. Tod-Nik Audiology, Inc.*, 270 A.D.2d 38, 38, 704 N.Y.S.2d 228 (1st Dept. 2000) (court assumed, but did not decide, that *Faragher/Ellerth* applied to NYSHRL and NYCHRL claims); *Pace v. Ogden Services Corp.*, 257 A.D.2d 101, 104, 692 N.Y.S.2d 220 (3rd Dept. 1999) (court, in sexual harassment case, acknowledged its ruling as the appropriate result under *Faragher* or *Ellerth*).

While the majority of cases, and the better reasoned cases, have found *Faragher/Ellerth* applicable to NYSHRL and NYCHRL claims, it is not quite settled law at this juncture. The Second Circuit in *McPherson v. NYP Holdings, Inc.*, 227 Fed. Appx. 51, 54 (2d Cir. 2007), for instance, applied *Faragher/Ellerth* to dismiss plaintiff's Title VII claims, but did not address

the applicability of the defense to NYSHRL or NYCHRL claims, deciding instead to dismiss these claims because the predicate for federal jurisdiction no longer existed and because "New York state law is not clear as to the application of this defense to cases under the Executive Law." Moreover, in *Pugliese v. Long Island R.R. Co.*, 2006 WL 2689600 (E.D.N.Y. Sept. 19, 2006), Judge Garaufis of the Eastern District noted that certain 2005 amendments to the NYCHRL provided that Title VII jurisprudence is "a useful guide for [NY]CHRL claims, but does not control the analysis of [NY]CHRL claims." *Id.* at *11.

However, these two cases are distinguishable on their facts. In *McPherson*, for instance, the Court did not reach the issue of whether *Faragher/Ellerth* had application to the case, finding it unnecessary to do so in view of the absence of federal jurisdiction. Similarly, Judge Garaufis in *Pugliese* did not specifically consider *Faragher/Ellerth* in the NYCHRL context, but analyzed instead whether the employer could be liable for the allegedly discriminatory conduct of its employees under a hostile work environment theory. *See Pugliese, supra*, 2006 WL 2689600 at *10-13. In considering whether Judge Garaufis would apply *Faragher/Ellerth* to NYCHRL-based claims if the case called for him to squarely reach that issue, moreover, his decision at the trial court level in *McPherson* establishes without question that he would. In *McPherson v. NYP Holdings, Inc.*, 2005 WL 2129172 (E.D.N.Y. Sept. 1, 2005), *aff'd*, 227 Fed. Appx. 51 (2nd Cir. 2007), Judge Garaufis found *Faragher/Ellerth* applicable and an independent basis upon which to dismiss hostile work environment claims not only under Title VII, but also under the NYSHRL and NYCHRL as well. *See McPherson, supra*, 2005 WL 2129172 at *8-9. Moreover, in assessing the NYCHRL claim, the Court in *Pugliese* relied on an amendment to the preamble of the NYCHRL that was adopted after the alleged occurrences that are the subject of the instant case. However, courts before and after

*Pugliese* routinely were employing *Faragher/Ellerth* to dismiss claims despite the unaltered existence of NYCHRL § 8-107(13)(b), the provision of the ordinance that provides for potential employer liability for discriminatory acts of its employees. *See* cases cited at pages 12-14, *supra.*

In addition to the majority view permitting application of *Farager/Ellerth* to NYCHRL claims, there is a strong policy justification for shielding an employer from liability for harassment by an employee, when the employee's acts are clearly outside the scope of employment. In *Pennsylvania State Police v. Suders*, 542 U.S. 129, 144, 124 S.Ct. 2342 (2004), the Supreme Court explained that traditional agency standards for imputing liability are not adequate for dealing with a supervisor's personal decision to harass others. *Id.* The Court stated that "an 'aided-by-the-agency-relation' standard…was insufficiently developed to press into service as the standard governing cases in which no tangible employment action is in the picture." *Id.* (citations omitted). Instead, the Court focused on the benefits of encouraging the creation of anti-harassment policies and effective grievance mechanisms when choosing to allocate liability. *Id.* The Court explained that anti-harassment legislation affords the motivation for an employer to establish clear policies and mechanisms for handling harassment, while providing employees a vehicle "to report harassing conduct before it becomes severe or pervasive." *Id.* (citations omitted). It was with this policy in mind that the Supreme Court established the *Faragher/Ellerth* defense. *Id. Accord, Ferraro, supra*, 440 F.3d at 99, 101 (when there is no tangible employment decision, "it is less certain that the supervisor misused official power to further the discriminatory harassment and that the company could know of the supervisor's misconduct" . . . . [A]ccordingly, the [Supreme] Court decided that strict employer liability was inappropriate in such a situation.").

13

For all these reasons, this Court should apply the *Faragher/Ellerth* affirmative defense to this case, and grant summary judgment in favor of The New School as a result.

## POINT II

### *RESPONDEAT SUPERIOR* PROVIDES NO BASIS FOR THE NEW SCHOOL'S POTENTIAL LIABILITY IN THIS CASE

Although Title VII, NYHRL and NYCHRL are treated similarly for establishing the elements of a sexual harassment claim, New York law imposes a more stringent standard for determining employer liability in harassment and discrimination cases. *See, e.g., International Health Care Exchange, Inc. v. Global Healthcare Exchange, LLC*, 470 F. Supp. 2d 345, 361 (S.D.N.Y. 2007) (*citing Heskin v. Insite Advertising, Inc.*, 2005 WL 407646, at *23 (S.D.N.Y. Feb 22, 2005)). In *Adorno v. Correctional Services Corp.*, 312 F. Supp. 2d 505, 517-518 (S.D.N.Y. 2004), the Court specifically determined in a diversity action in New York State that the standards for employer liability under the HYCHRL differ from the essentially *respondeat superior* standard under Title VII. "'New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context.'" *Id.* at 517 (*quoting Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 531 (S.D.N.Y.1998) (citing cases)). The Appellate Division, Fourth Department explained the differing New York law in this area thusly:

> In New York, the relevant analysis is not based on common-law rules of agency and, indeed, almost wholly disregards those rules. Thus, the doctrine of *respondeat superior*, or vicarious liability based on the agency relationship, is not available in cases involving discrimination, including sex-based discrimination and its sexual harassment component.

*Father Belle Community Center v. New York State Div. of Human Rights on Complaint of King*, 221 A.D.2d 44, 53, 642 N.Y.S.2d 739 (4th Dept.1996). *See also Totem Taxi, Inc v. NYS*

14

*Human Rts. Appeal Board*, 65 N.Y.2d 300, 305-306, 491 N.Y.S.2d 293 (1985) ("[I]t cannot be rationally concluded under the [NYHRL] that an employer has been guilty of discrimination whenever any employee at any level commits, out of personal pique, a disapproved and unanticipated discriminatory act."); *State Div. of Human Rights on Complaint of Greene v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687, N.Y.S.2d 411 (1985) (citations omitted) ("[A]n 'employer cannot be held liable for an employee's discriminatory act unless the employer becomes a party to it by encouraging, condoning, or approving it.'"); *Longmire v. Wyser-Pratte*, 2007 WL 2584662, *10 (S.D.N.Y. Sept. 6, 2007) (same).

There is a two-pronged standard for determining employer liability under State and City human rights laws.  First, as noted above, the employer must have encouraged, condoned or approved the actionable behavior.  *Ponticelli v. Zurich American Ins. Group*, 16 F. Supp. 2d 414, 433 (S.D.N.Y. 1998) (citations omitted).  Second, the employer must be on "actual notice, rather than constructive notice" of the employee's actions.  *Ponticelli, supra,* 16 F. Supp. 2d at 433*; see also St. Elizabeth's Hosp.*, *supra*, 66 N.Y.2d at 687 ("Condonation . . . contemplates a knowing, after-the-fact forgiveness or acceptance of an offense").

This stricter standard applies equally to NYCHRL claims.  In *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, N.Y.S.2d 382 (2004), for instance, New York's Court of Appeals held that because plaintiff "failed to offer any evidence that the [defendant employer] knew of, let alone condoned or acquiesced in the epithets," discrimination claims under both NYCHRL and NYSHRL properly were dismissed.  *Id.* at 311. *See also  Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004); *Heskin v. Insite Advertising, Inc.*, 2005 WL 407646, at *23 (S.D.N.Y. Feb 22, 2005) (citations omitted); *Rikhy v. AMC Computer Corp.*, 2003 WL 1618529, at *5 (S.D.N.Y. 2003).

Here, The New School cannot be held vicariously liable for the actions of Pan under New York law.  The New School in no way encouraged, approved or condoned Mr. Pan's actions—indeed, the Record establishes that the School was unaware of the allegedly offensive actions until plaintiff brought them forward in the case of the alleged harassment, and until Pan's lawyer produced in discovery the documents demonstrating plaintiff's unauthorized internet usage in the retaliation case. By plaintiff's own account, moreover, the remedial action was effective—the allegedly harassing behavior ceased and did not recur.   (Rule 56.1 Statement at ¶ 43).

For these reasons, The New School is not and cannot be liable for the actions of Pan. On this alternative basis, separate and apart from the dispositive application of the *Faragher/Ellerth* defense, the School is entitled to summary judgment dismissing the Complaint against it.

## POINT III

### PLAINTIFF'S RETALIATION CLAIM AGAINST
### THE NEW SCHOOL ALSO FAILS

Plaintiff recently amended her Complaint to assert a claim for retaliation based on the allegation that Pan covertly monitored her computer usage at work. In doing so, Pan had discovered that plaintiff was viewing sexually explicit websites, and was soliciting relationships with others on those websites. Pan testified that he engaged in this activity without informing the New School, in an effort to develop evidence against plaintiff should she decide to file a lawsuit against him. (Rule 56.1 Statement at ¶ 56).  As against The New School, plaintiff's retaliation claim cannot survive summary judgment scrutiny.

To establish a *prima facie* case under the NYCHRL anti-retaliation provision, a plaintiff must establish four factors: (1) participation in a protected activity; (2) knowledge by plaintiff's

16

employer of the protected activity; (3) a materially adverse action suffered by plaintiff; and (4) a causal connection between the protected activity and the materially adverse action. *Kemp v. Metro-North R.R.*, 2007 WL 1741256, \*16 (S.D.N.Y. June 14, 2007).  In this case, plaintiff's complaints to The New School concerning Pan's alleged harassing behavior have been established. However, plaintiff cannot satisfy the third or fourth prongs of the analysis—she cannot demonstrate that The New School acted toward her in a manner that would be perceived by a reasonable employee as materially adverse to her employment, or that the motivation for this alleged action was to retaliate against her for her complaint about Pan.

Plaintiff effectively concedes in her Second Amended Complaint, as she must, that the surveillance by Pan was not authorized by The New School, and was undertaken without its knowledge. (Rule 56.1 Statement at ¶ 54).  Moreover, the secretive nature of Pan's action forecloses any possible retaliatory motive on the part of The New School. On this basis, this Court should grant The New School's motion for summary judgment on plaintiff's claim for retaliation.

Plaintiff, moreover, cannot hold The New School vicariously liable for Pan's conduct in this regard.  As noted above, to establish *respondeat superior* liability New York law requires proof that the employer encouraged, condoned or approved the actionable behavior, and proof that the employer was on actual notice of the employee's actions. *See, e.g., Ponticelli v. Zurich American Ins. Group*, 16 F. Supp. 2d 414, 433 (S.D.N.Y. 1998) (citations omitted); *St. Elizabeth's Hosp., supra*, 66 N.Y.2d at 687.

Even if the issue is analyzed under federal principles in this area, the claim still fails. The Second Circuit has held that when considering employer liability for retaliation, "we are expected to apply common law principles of agency." *Reed v. A. W. Lawrence & Co.*, 95 F.3d

17

1170, 1180 (2d Cir. 1996). Numerous district courts also have adopted agency-based approaches in analyzing whether to impute liability to an employer in a retaliation action. *See, e.g.*, *Abreu v. Suffolk County Police Dept.*, 2007 WL 608331, *12 (E.D.N.Y. Feb. 23, 2007) (liability can be imputed to the employer only "where a supervisory employee with the power to hire, fire, demote, transfer, suspend or investigate an employee *is shown to have used that authority to retaliate for the filing of a charge of sexual harassment.*" (citation omitted) (emphasis supplied); *Muraj v. UPS Freight Services*, 2006 WL 2528538 at *3 (W.D.N.Y. Aug. 31, 2006). *See also Karibian v. Columbia University*, 14 F.3d 773, 775 (2d Cir. 1994) (Second Circuit looked to "traditional agency principles" in determining whether Columbia could be liable for hostile work environment created by defendant supervisor, noting that "employer will be liable for the torts of its employees committed 'while acting in the scope of their employment.'").

New York courts also have spoken to what constitutes supervisory action for matters of imputing liability. In *Priore v. New York Yankees*, 307 A.D.2d 67, 74, 761 N.Y.S.2d 608 (1st Dept. 2003), the First Department specifically defined the meaning of an agency or supervisory capacity in NY Admin. Code §8-107 as follows; "where they *act with or on behalf of* the employer in hiring, firing, paying or in administering the 'terms, conditions or privileges of employment.'" (emphasis supplied). Thus, when employee's action is not "with or on behalf of" the employer, liability cannot be imputed.

Plaintiff here concedes that Pan's actions were "not authorized" by The New School, and surely cannot be characterized as "with or on behalf of" the University. Furthermore, it is undisputed that The New School had absolutely no knowledge of Pan's conduct, and did not implicitly or explicitly support his actions. Therefore, under applicable agency principles Pan's

actions cannot be imputed to his employer, and plaintiff's retaliation claim against The New School should be dismissed.

Moreover, Pan was no longer in a supervising or managerial position over plaintiff at the time of the alleged retaliation. (Rule 56.1 Statement at ¶¶ 37-39).  Another New School employee, Charles Kesl, was in place to oversee operations in the Print Output Center, and Pan was directed to have absolutely no contact with plaintiff. (*Id.* at ¶¶ 34, 37, 39).  At this juncture Pan had no authority to hire, fire, promote, demote or otherwise influence the employment status of plaintiff, and he was not acting under any authority, actual or apparent, when he began monitoring plaintiff.  On this independent basis, this Court should grant The New School's motion for summary judgment as to the retaliation claim.

In addition, the fourth and final element that plaintiff must establish to make out a *prima facie* retaliation case is a causal connection between the protected activity and the materially adverse action.  *Donato v. Plainview-Old Bethpage Cent. School Dist.* 96 F.3d 623, 634 (2d Cir. 1996); *Kemp v. Metro-North R.R.*, 2007 WL 1741256, *16 (S.D.N.Y. June 14, 2007).  Specifically, to satisfy this element of the test plaintiff must demonstrate "that a retaliatory motive played a part in the adverse employment action." *Woods v. Enlarged City School Dist. of Newburgh*, 473 F. Supp. 2d 498, 527 (S.D.N.Y. 2007).   In *Woods*, Judge Conner explained the need for direct evidence showing a retaliatory motive on the part of the alleged retaliator.  Plaintiff had alleged that she was discharged in retaliation for her complaints that she was discriminated against by Caucasian employees at her job. *Id.* at 527.  The Court concluded that plaintiff failed to demonstrate retaliatory motive in the discharge, explaining, "plaintiff provides no direct evidence of a retaliatory motive for her termination aside from her own conclusory allegations, which are plainly insufficient to defeat defendants' motion for

summary judgment." *Id.* at 528.

In this case, Pan has testified that he scrutinized plaintiff's computer usage because he feared that she may bring a lawsuit against *him* (not against The New School). Pan's actions were *secretive*, and were not intended to be disclosed to the New School or to become the basis for any employment-related action. Instead, the motive for Pan's actions was his desire to protect himself; on these facts, there can be no rational belief that he intended to somehow cause an actual injury to plaintiff, calculated to dissuade her from making future complaints. Accordingly, on this alternative basis this Court should grant The New School's motion for summary judgment as to the retaliation claim against it.

Finally, the alleged surreptitious scrutiny of plaintiff's unauthorized computer usage by Pan caused her no tangible harm, and therefore cannot be considered as an adverse employment action. The Supreme Court in *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405 (2006) expanded the meaning of adverse employment actions in the context of Title VII federal retaliation claims by holding that the anti-retaliation provision of Title VII was not limited to discriminatory action that affects the terms and conditions of employment.

However, in order to make out a *prima facie* retaliation claim under federal law an employee still must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern* at 2415 (internal quotation marks and citations omitted). The Court also made clear that an anti-retaliation provision only protects an individual "from retaliation that produces an injury or harm." *Id.* at 2414.

As the D.C. Circuit has explained, "Actionable retaliation claims are limited to those

where an employer causes '*material* adversity,' not 'trivial harms.'" *Wiley v. Glassman*, 511

F.3d 151, 161 (D.C. Cir. 2007) (*citing Burlington Northern*, 548 U.S. at 2415 (emphasis

original)).  For example, in *Sewell v. Chao*, 2008 WL 274880 (D.D.C. Feb. 1, 2008), plaintiff

alleged that her employer gave her assignments without training and transferred her to another

department in retaliation for filing a complaint.  She further alleged that her assignments were a

"tangible change" in duties that constituted a "material employment disadvantage." *Id.*

Importantly, however, she did not allege that her pay or work hours were reduced, or that her

new job was less prestigious.  *Id.*  The Court found no retaliation as a matter of law, because

"plaintiff has failed to offer any evidence of injury or harm resulting from her new

assignments." *See also Glen v. Paulson*, 234 Fed. Appx. 5, 6 (2d Cir. 2007) (Slip Opinion)

(citations omitted) ("A plaintiff sustains an adverse employment action if he or she endures a

'materially adverse change' in the terms and conditions of employment").

      Moreover, at least two recent Southern District decisions have held, subsequent to

*Burlington Northern*, that "increased scrutiny does not constitute adverse action." *Moses v.

City of New York*, 2007 WL 2600859, *2 (S.D.N.Y. Aug. 28, 2007) (Judge Rakoff), and *Scott

v. Cellco Partnership*, 2007 WL 1051687, *2 (S.D.N.Y. Apr. 3, 2007) (Judge McKenna).  In

*Scott*, Judge McKenna held that "defendant's general reprimands about plaintiff's lateness and

other accusations, and alleged excessive scrutiny of plaintiff . . . if true, do not constitute

adverse employment actions as now defined in *Burlington*." *Id.* at *2.  And in *Moses*, Judge

Rakoff rejected plaintiff's allegations that "the introduction of intervening managers to serve

between plaintiff and her acting supervisor, [and] increased scrutiny of plaintiff by her

supervisors" were sufficient to establish a *prima facie* retaliation case.  "[E]ven in the wake of

*Burlington Northern*, increased scrutiny does not constitute adverse action." *Id.*  *See also*

*Zolondek v. Worldwide Flight Services, Inc.*, 2006 WL 4100886, *15 (E.D.N.Y. Aug. 28, 2006) ("The employer's actions alleged, that she was watched constantly and monitored by a camera, are not harmful to the point that they could well dissuade a reasonable worker from complaining").

In this case, plaintiff Zakrzewska alleges that she was subject to increased scrutiny by Pan (albeit completely unknown to her), but does not even clam to have had any knowledge of Pan's alleged actions. (Rule 56.1 Statement at ¶ 55). Even assuming her allegations as true, therefore, they do not constitute adverse employment action on the part of the New School. Moreover, plaintiff cannot demonstrate that this conduct has caused her any tangible injury.

Having had no knowledge of the increased scrutiny, by definition it did not interfere with her ability to continue or complete her work. The undisclosed observation of her personal, non-work related internet communications, on its own, simply does not constitute an objective injury. *See Patane*, 508 F.3d 106, *supra*. Second, there is no evidence that Pan disclosed this information to The New School, such that The New School did or even could act upon it.

Third, plaintiff was aware, or should have been aware, of The New School's policy prohibiting such personal uses of University computers in the workplace. Simply stated, the electronic communication system was for University business only, and one can hardly consider the solicitations plaintiff "discussed" with various men to have been related to New School business. (Rule 56.1 Statement at ¶¶ 52-53). That policy also expressly informed employees that the University retained the right to monitor such usage, and thus plaintiff had no reasonable expectation of privacy or confidentiality with respect to such usage. Thus, even accepting for the sake of argument that Pan's conduct was the equivalent of "increased scrutiny" of plaintiff, under the circumstances such scrutiny could not cause a reasonable

person, *i.e.*, an employee who actually obeys University policy, to "think twice" before complaining of harassment.

Therefore, plaintiff's claim for retaliation fails even if the so-called *Burlington Northern* standard is applied.  The retaliation claim thus cannot survive summary judgment, under any potentially applicable analytical framework.

## <u>CONCLUSION</u>

For the reasons stated above, the New School's motion for summary judgment should in all respects be granted, and the Second Amended Complaint as against it should be dismissed.


Dated:  April 7, 2008                           WARD NORRIS HELLER & REIDY LLP


                                                 /s/ Thomas S. D'Antonio                    
                                                Thomas S. D'Antonio
                                                300 State Street
                                                Rochester, New York 14614
                                                Telephone (585) 454-0700
                                                tsd@wnhr.com

                                                *Attorneys for defendant*
                                                *The New School*

23