UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DOMINIKA ZAKRZEWSKA,

                  Plaintiff,


            -against-                                 06 Civ. 5463 (LAK)


THE NEW SCHOOL, et ano.,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**
(Corrected)


        Appearances:


                Jason L. Solotaroff
                GISKAN SOLOTAROFF ANDERSON & STEWART LLP
                *Attorneys for Plaintiff*


                Thomas S. D'Antonio
                WARD NORRIS HELLER & REIDY LLP
                *Attorneys for Defendant The New School*


                Theodore L. Blumberg
                *Attorney for Defendant Kwang-Wen Pan*


LEWIS A. KAPLAN, *District Judge.*

        Plaintiff brings this sexual harassment-retaliation case against the alleged harasser,

Kwang-Wen Pan, and Pan's employer, The New School ("TNS").  The matter is before the Court

on TNS's motion for summary judgment dismissing the complaint as to it.

## I.  Facts

### A.  The New School's Policies

At all times relevant to this case, TNS had a policy prohibiting sexual harassment and romantic involvement between staff and students.[1]  The policy was accessible on the TNS web site and published in its student handbook, which was given to students during the enrollment process.[2] The handbook instructed students to familiarize themselves with TNS policies and explained that the policies, including that with respect to sexual harassment, were available on the web site.[3]  The policy was sent also to staff.[4]  In addition, TNS had guidelines for dealing with issues of sexual harassment that provided a multi-step procedure for dealing with sexual harassment complaints.[5]

---

[1] Def. 56.1 St. ¶¶ 6-7.  (Unless otherwise indicated, the averments in TNS's Rule 56.1 Statement cited herein have been admitted by plaintiff.)

[2] *Id.* ¶¶ 8, 10-11

[3] *Id.* ¶ 11.

[4] Cantrell Dep. 25:8-22.

[5] Tennent Aff. ¶ 4 & Def. App. Ex. D; Def. 56.1 St. ¶ 14.

Plaintiff's response to paragraph 14 of TNS's 56.1 Statement purports to deny the averment. It does not, however, cite any admissible evidence that places in issue the truth of TNS's averment, which is supported by Ms. Tennent's affidavit. TNS's position on this point therefore is accepted.

Parenthetically, the Court notes also that plaintiff's Rule 56.1 Statement claims that Exhibit Q to her attorney's affirmation are TNS's Guidelines For Dealing With Issues of Sexual Harassment & Discrimination.  But the document cited is nothing more than a screen-shot of a page from the TNS web site that, insofar as is relevant here, states that TNS's revised procedures for sexual harassment claims are posted elsewhere.

3

B.      *The Relationship Between Zakrzewska and Pan*

          Plantiff enrolled as a freshman at TNS in the fall of 2002.[6]  In April 2003, she took

a part-time job in TNS's Print Output Center, which was located within its Academic Computing

Center.[7]  Pan was employed in the Computer Center, having worked there since 1998.[8]

          Commencing in the summer of 2003 and continuing until at least February 2005,

plaintiff and Pen exchanged e-mails, shared conversations, photos and music, and had dinner and

attended an opera together.[9]  Indeed, plaintiff at one point sent an e-mail with her personal cell phone

number to a group including Pan that she described as her "My Special People" and closed by stating

"Now YOU may call me ☻ i am Always waiting ☻ Lets keep in touch[.]  Love Dominika."[10]  And

on June 24, 2004, plaintiff sent Pan an e-mail in which she stated that he was "one of my very few

bbest [*sic*] friends ☻."[11]  Nevertheless, as indicated above, the Court assumes for present purposes

that plaintiff has made out a case that she was harassed by Pan.

---

[6]
          Def. 56.1 St. ¶ 3.

[7]
          *Id.* ¶ 4; Zakrzewska Dep. 18:5-20.

[8]
          *Id.* ¶ 5.

[9]
          *Id.* ¶ 15.

          Plaintiff's response to this paragraph denies TNS's averments only to the extent it used the
          words "regularly" and "shared," which she regards as conclusory and ambiguous.  There is
          no need to adopt TNS's characterization of these contacts as regular.  The evidence supports
          its use of the word "shared."

[10]
          *Id.* ¶ 17; Zakrzewska Dep. 136-37; Def. App. Ex. H.

[11]
          Def. App. Ex. I.

4

C.      *Plaintiff's Complaint to TNS and Its Response*

During this entire period – that is, from the summer of 2003 through May 2005 – plaintiff never informed TNS that Pan had harassed her.[12]  In May 2005, however, she complained to TNS that Pan had sexually harassed her.[13]  When notified by plaintiff of the alleged harassment, Carol Cantrell scheduled a meeting with plaintiff and Keila Tennent, TNS's associate general counsel.[14]  During the course of the meeting, plaintiff told Mss. Cantrell and Tennent that she had e-mails from Pan that supported her claim and promised to send them, which ultimately she did.[15]  Ms. Cantrell provided plaintiff with a copy of the TNS's sexual harassment policy at the meeting.[16]

Following the meeting, TNS initiated an investigation, which included speaking to Pan's supervisor, reviewing the e-mails plaintiff provided, attempting to contact co-workers

---

[12]

Def. 56.1 St. ¶¶ 21-23.

Plaintiff's Rule 56.1 Statement denies this, citing page 83 of her deposition.  Plaintiff's testimony, however, does not raise a genuine issue of material fact as to whether she informed TNS of the alleged harassment before May 2005.  She testified only that, prior to her going to TNS Human Resources, she told a few "friends, co-workers" "how Pan felt about" her.  Zakrzewska Dep. 82:8-83:25.  Some were students and a few perhaps were employed in the Print Output Center.  *Id.*  In at least two of these instances, she asked the persons with whom she spoke to keep the matter confidential, *id.* 94:23-25, 96:3-9, 96:22-24, 98:22-24, and there is no evidence that she asked any of them to take an official action, even assuming for the sake of discussion that any had been in a position to have done so.  She never invoked the TNS procedure for sexual harassment complaints or informed anyone prior to May 2005 in a position of responsibility at TNS of Pan's alleged actions.

[13]

Def. 56.1 St. ¶ 22.

[14]

*Id.* ¶ 24.

[15]

*Id.* ¶¶ 28, 30.

[16]

*Id.* ¶ 25.

identified by plaintiff, and meeting with Pan.[17]  In the meeting with Pan, he confirmed that he had a romantic interest in plaintiff, stated that he understood that his conduct had been inappropriate, and apologized for his actions.[18]  Mss. Cantrell and Tennent thereupon instructed Pan that he was to have no further personal communications with plaintiff, told him that he would be terminated if there were any further problems, and instructed him not to retaliate against plaintiff.[19]  TNS required Pan to participate in sexual harassment training, referred him for further training, and removed Pan from all supervisory and managerial responsibilities with respect to plaintiff.[20]

In September 2005, Mss. Cantrell and Tennent met with plaintiff and informed her of the outcome of the investigation and the remedial actions that TNS had taken.[21]  Plaintiff confirmed that Pan had not initiated any contact with her following her complaint to TNS. [22]  According to the TNS officials, they advised her that she could proceed with a formal grievance if she was dissatisfied.[23]  Plaintiff, however, states that Mss. Cantrell and Tennent did not explain what, if any, additional options she had.[24]  This dispute as to whether Mss. Cantrell and Tennent advised

---

[17]  
  *Id.* ¶ 31.

[18]  
  *Id.* ¶ 33.

[19]  
  *Id.* ¶¶ 34-35.

[20]  
  *Id.* ¶¶ 36-37.

[21]  
  *Id.* ¶¶ 40-42.

[22]  
  *Id.* ¶ 43.

[23]  
  *Id.* ¶ 45. Plaintiffs' response to this paragraph denies this averrment, citing paragraph 5 of plaintiff's affidavit.

[24]  
  Zakrzewska Aff. ¶ 5.

6

plaintiff that she could proceed with a formal grievance is immaterial, however, as it is undisputed that plaintiff received a written copy of TNS's sexual harassment policy, which contained this information.[25]

Three months later, plaintiff sent an e-mail to TNS in which she expressed dissatisfaction with the outcome of her complaint.[26]   This was referred to the provost's office in accordance with TNS's grievance policy, and a vice provost tried to contact plaintiff to schedule a meeting pursuant to TNS's procedures.  Plaintiff, however, did not respond.  Rather, her attorney wrote to TNS, indicating that he was poised to sue, which terminated further internal proceedings at the school.[27]

D.      *Pan's Monitoring of Plaintiff's Computer Use*

Although Pan's communications with plaintiff stopped immediately once the TNS officials met with him, his interest in plaintiff did not.  During discovery in this action, Pan produced "screen shots" that he had collected from monitoring plaintiff's use of TNS-owned computers while she was at work.  This of course suggested that Pan had used a TNS-owned computer and the Internet for personal reasons in violation of TNS policy.[28]  Plaintiff concedes, however, that neither

---

[25]

Def. 56.1 St. ¶ 12. Plaintiff denies that she knew TNS prohibited sexual harassment in the workplace, but does not dispute that she received TNS's student handbook containing its sexual harassment policy. Pl. 56.1 St. ¶ 12; *see also* Zakrzewska Dep. 103.

[26]

Def. 56.1 St. ¶ 47.

[27]

*Id.* ¶¶ 48-50.

[28]

*Id.* ¶¶ 51-53.

she nor TNS was aware of Pan's unauthorized monitoring of her computer use.[29]

E.      *Plaintiff's Claims and the Motion*

The amended complaint asserted a single claim for sexual harassment under the New York City Human Rights Law ("NYCHRL") against both defendants.[30]  Following the disclosure of Pan's unauthorized monitoring of plaintiff's computer usage, plaintiff amended to add a claim under the same statute for retaliation based on Pan's post-complaint monitoring.

TNS now moves for summary judgment dismissing the second amended complaint on the grounds that TNS is not vicariously liable for Pan's alleged sexual harassment and that plaintiff cannot establish a *prima facie* case of retaliation against TNS.

II.     Discussion

A.      *Vicarious Liability for Sexual Harassment*

This action is representative of an increasing volume of employment discrimination cases that are brought pursuant to one or both local New York anti-discrimination laws – the New York State Human Rights Law ("NYSHRL")[31] and the NYCHRL – rather than Title VII of the Civil Rights Act of 1964 ("Title VII").[32]

---

[29]

Id. ¶ 55.

[30]

N.Y.C. AD. C. § 8-107.

[31]

N.Y. EXEC. L. § 296.

[32]

There appear to be two reasons for this trend.  First, some counsel may view the provisions of the local laws as more favorable to plaintiffs than Title VII.  Second, some may think state court juries in the City of New York more favorable to plaintiffs than federal juries in this Court and the Eastern District because the state juries are drawn entirely from within

Beginning long ago, federal and state courts usually have treated Title VII and the local anti-discrimination laws, despite some differences in language and structure, as substantially co-extensive.   As the Second Circuit has put it, "New York Courts examine claims under [the NYSHRL and the NYCHRL] with the same analytical lens as corresponding Title VII-based claims."[33]   This has been true not only with respect to the substance of the conduct prohibited, but generally also with respect to the matter of employer liability for discriminatory acts of employees and other agents.[34]   Accordingly, TNS maintains that the affirmative defense to employer sexual harassment liability created for Title VII cases in *Faragher v. City of Boca Raton*[35] and *Burlington Industries, Inc. v. Ellerth*[36] applies under the NYCHRL and that TNS has satisfied its requirements. Plaintiff, on the other hand, argues that *Faragher-Ellerth* does not control the employer liability question under the NYCHRL and, even if it did, that there is a genuine issue of material fact as to whether TNS has satisfied its requirements.

The question whether *Faragher-Ellerth* applies in NYCHRL cases, as will appear, is not free from doubt.  In consequence, it is prudent first to consider whether TNS would be entitled to dismissal of the sexual harassment claim, assuming *arguendo* that *Faragher-Ellerth* does apply,

---

the City whereas the federal juries are drawn from both City and suburban counties.

[33]
   *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007); *accord Sardina v. UPS, Inc.,* 254 Fed. Appx. 108, 2007 WL 4105811 (2d Cir. 2007) (NYCHRL); *Petrosino v. Bell Atlantic,* 385 F.3d 210, 220 n.11 (2d Cir. 2004); *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 n.1 (2d Cir. 2000).

[34]
   *See, e.g., Randall v. Tod-Nik Audiology, Inc.,* 270 A.D.2d 38, 704 N.Y.S.2d 228, 229 (1st Dept. 2000) (assuming applicability of federal standard to claims under NYSHRL and NYCHRL).

[35]
   524 U.S. 775 (1998).

[36]
   524 U.S. 742 (1998).

and then to consider its applicability only if that proves essential to a determination of the motion.

      *1.*     *TNS and* Faragher-Ellerth

In *Faragher* and *Ellerth,* the Supreme Court held that an employer is not liable under Title VII for sexual harassment committed by a supervisory employee if it sustains the burden of proving that (1) no tangible employment action "such as discharge, demotion, or undesirable reassignment" was taken as part of the alleged harassment,[37] (2) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior,"[38] and (3) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[39]

Plaintiff does not contend that any tangible employment action was taken against her.[40] Nor does she dispute  TNS's conclusion – drawn from plaintiff's admitted failure to complain to TNS of Pan's allegedly unwanted attentions for about a year, followed by her admitted failure to file a grievance when she announced that she was dissatisfied with the outcome of the investigation and corrective action taken by Mss. Cantrell and Tennent – that she unreasonably failed to take

---

[37]     *Id.* at 765.

[38]     *Faragher*, 524 U.S. at 807.

[39]     *Id.*

[40]     The alleged sexual harassment, according to plaintiff's memorandum, consisted only of alleged inappropriate remarks about Pan's feelings for plaintiff, comments on her personal appearance, attempts to kiss plaintiff, inquiries about her personal life, personal messages, and a number of small gifts.  Pl. Mem. 4-7.

advantage of corrective opportunities offered by TNS.[41]  It therefore is necessary to consider only plaintiff's contention that there are material issues of fact "concerning whether [TNS] disseminated or effectively implemented its anti-harassment policy" and therefore whether it took reasonable care to prevent sexual harassment.[42]

Plaintiff's contention that TNS neither disseminated its anti-sexual harassment policy nor ensured that all employees underwent sexual harassment training is insufficient.  The first contention is mistaken and the second beside the point.

First, the maintenance of an anti-sexual harassment policy, "[a]lthough not necessarily dispositive, . . . is an important consideration in determining whether the employer" has taken reasonable care.[43]  To be sure, this would not be so if such a policy were kept secret from those to whom it applied.  But nothing remotely approaching that occurred here.  To the contrary, it is undisputed that the TNS anti-sexual harassment policy was:

- •   Available on TNS's web site.[44]

- •   Sent in hard copy to all employees.[45]

---

[41]

Compare Def. Mem. 9-10 with Pl. Mem. 4-7.

[42]

Pl. Mem. 20.

Plaintiff admits that TNS in fact had such a policy.  Compare Def. 56.1 St. ¶ 6 with Pl. 56.1 St. ¶ 6.

[43]

Mack v. Otis Elevator Co., 326 F.3d 116, 128 (2d Cir. 2003) (quoting Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 295 (2d Cir. 1999), cert. denied, 529 U.S. 1107 (2000) (internal quotation marks omitted)).

[44]

Def. 56.1 St. ¶ 8.

[45]

Cantrell Dep. 25:8-17.

•    Published in the student handbook given to all students during the enrollment process.[46]

•    Read by Pan in the employee handbook at the time he was hired.[47]

Accordingly, there is no genuine issue of material fact that TNS took reasonable steps to disseminate its anti-sexual harassment policy.[48]

Plaintiff next seizes on the fact that TNS in 2004 purported to make sexual harassment training "mandatory" but evidently did not ensure that the employees in the Computing Center took the training.[49]   The Second Circuit, however, has said that the "reasonable care" prong of *Faragher-Ellerth* is satisfied by the establishment of "an anti-harassment policy and an

---

[46]  Plaintiff attempts to quibble with this by contending that Ms. Cantrell was uncertain whether the method of transmission of the hard copy was by "interoffice mail" (Pl. 56.1 St. ¶ 9) and stating plaintiffs herself did not receive it "via inter-office mail" (Zakrzewska Aff. ¶ 2).  But the point of TNS's assertion is that the policy was sent to all employees in hard copy, not that it was disseminated through interoffice mail as opposed to some other means.  Ms. Cantrell expressed no uncertainty as to the fact that it was disseminated to all employees, and plaintiff's affirmation in which she denies having received it by "inter-office mail" does not deny that she received it during her employment at the Computing Center.  Accordingly, there is no genuine issue of fact as to TNS's distribution of the policy in hard copy form to all employees.

[47]  Def. 56.1 St. ¶¶ 10-11. It is undisputed also that the handbook urged students to familiarize themselves with University policies and advised them that policies relating to student rights and responsibilities, including the anti-sexual harassment policy, were on the TNS web site.

Pan Dep. 18:13-23.

[48]  The record includes a receipt for the policy signed by Pan.  Def. 56.1 St. Ex. F.

*Meng v. Ipanema Shoe Corp.,* 73 F. Supp.2d 392 (S.D.N.Y. 1999), relied upon by plaintiff, is not to the contrary.  In that case, there was evidence from which it might have been concluded that the policy in question was distributed only in response to specific incidents.

[49]  She relies on a number of cases in other circuits that suggested that training was or might be required by *Faragher-Ellerth.*

accompanying complaint procedure."[50]  It seems quite doubtful that the Circuit would have made that statement if it had even entertained the thought that training programs were necessary.  And surely there is nothing in *Faragher* and *Ellerth* to suggest that the Supreme Court intended to spawn a cottage industry of anti-discrimination training programs by limiting the affirmative defense that it there created to employers who put such programs in place.  This of course is not to suggest that TNS's position would not have been even stronger had it ensured that its employees took the supposedly mandatory training.  But its alleged failure to have taken that additional step does not bear on the availability of the *Faragher-Ellerth* defense.

In the last analysis, this is a case in which the alleged harassment, assuming it occurred, violated an express and properly disseminated policy of TNS, a policy that was specifically known to Pan, the alleged harasser.  No one in a position of responsibility at TNS was aware of Pan's actions until plaintiff, after a very lengthy period of silence, finally came forward in May 2005.  As soon as she came forward, TNS took reasonable, effective steps to put an end to it.  Although plaintiff was not entirely satisfied with the outcome, she deliberately decided not to pursue the next step in the grievance procedure that TNS made available to her.  In all the circumstances, there is no genuine issue of material fact.  TNS is entitled to judgment as a matter of law on the sexual harassment claim, assuming that the *Faragher-Ellerth* defense applies to plaintiff's NYCHRL claim.

### 2.    Faragher-Ellerth *and the NYCHRL*

Section 8-107, subd. 1(a), of the New York City Administrative Code prohibits employment discrimination on the basis of gender as well as other criteria.  Subdivision 13(b) then states:

---

[50]   *Leopold v. Baccarat, Inc.,* 239 F.3d 243, 245 (2d Cir. 2001).

"An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

"(1) the employee or agent exercised managerial or supervisory responsibility; or

"(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

"(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."[51]

Thus, the local law on its face appears to impose vicarious liability on an employer for discriminatory acts of (1) a manager or supervisor, without regard to whether the employer or another of its managers or supervisors knew or should have known of those acts, and (2) a co-worker, provided the employer, or a manager or supervisor, knew of and acquiesced in, or should have known of, the co-worker's acts, among other circumstances.  TNS has not sought dismissal on the ground that there is no genuine issue of material fact with respect to the conditions for employer liability under Section 8-107, subd. 13(b), and it appears that there is at least some evidence that Pan was a manager or supervisor, its motion with respect to the sexual harassment claim turns on the purely legal question whether *Farager-Ellerth* controls here despite the arguably different approach to employer vicarious liability embodied in the NYCHRL.

The Second Circuit, federal district courts, and New York courts either have applied, or assumed the applicability of, *Faragher-Ellerth* in NYCHRL cases.[52]  Nevertheless, the Second

---

[51]     N.Y.C. AD. C. 8-107, subd. 13(b).

[52]     *E.g., Sardina v. UPS, Inc.,* 254 Fed. Appx. 108, 2007 WL 4105811 (2d Cir. 2007) (affirming summary judgment for employer dismissing, *inter alia,* NYCHRL claim under

14

Circuit last year, in an unreported and therefore non-precedential summary order, elected to affirm

dismissal of a plaintiff's NYCHRL claim on jurisdictional grounds rather than on the merits in view

of the panel's uncertainty concerning the applicability of *Faragher-Ellerth* in cases based on state

and local law.[53]  The applicability of *Faragher-Ellerth* in a NYCHRL case therefore may be regarded

as an open question in this Circuit.  As this is a diversity case, this Court is obliged to determine

whether the New York courts would be likely to apply *Faragher-Ellerth* or to adopt a different

interpretation of Section 8-107, subd. 13(b).[54]

        The arguments for applying the *Faragher-Ellerth* test in state and local law cases are

not trivial.  The existence of different standards as to employer liability would require employers to

conduct their affairs in a manner dictated by the most restrictive criteria.  Once litigation begins, the

existence of different standards for federal, state and local legal theories applied to the same facts

could render trials – in those cases in which plaintiffs proceeded in the alternative on both federal

and state legal theories based on the same facts – more complex, more time-consuming and more

expensive and confuse juries.  But these, in the last analysis, are considerations relevant to policy

judgments properly made by legislatures, at least in the absence of preemption of one or more legal

---

*Faragher-Ellerth*); *Ferraro v. Kellwood Co.,* 440 F.3d 96 (2d Cir. 2006) (same); *Eichler v. Am. Int'l Group, Inc.,* No. 05 Civ. 5167(FM), 2007 WL 963279 (S.D.N.Y. Mar. 30, 2007) (Maas, M.J.) (granting summary judgment for employer dismissing, *inter alia,* NYCHRL claim under *Faragher-Ellerth*); *Randall v. Tod-Nik Audiology, Inc.,* 270 A.D.2d 38, 704 N.Y.S.2d 228 (1st Dept. 2000) (assuming but not deciding that *Faragher-Ellerth* applies under NYCHRL).

[53]     *McPherson v. NYP Holdings, Inc.,* 227 Fed. Appx. 51, 54, 2007 WL 1830764, at *2 (2d Cir. June 27, 2007).

[54]     *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), requires, of course, that federal courts exercising diversity jurisdiction apply state substantive law in order that "the outcome of the litigation in the federal court . . . be substantially the same . . . as it would be if tried in a state court." *Guaranty Trust Co. v. York,* 366 U.S. 99, 109-10 (1945).

regimes by another.  The task for this Court is different.  There is a no preemption argument before the Court.  Its task is to read the words of the NYCHRL, taking into account the circumstances in which those words exist, and forecast as best it can the outcome of this question were it presented to the New York Court of Appeals.

New York, like most other jurisdictions, takes the view that "[t]he starting point of analysis must be the plain meaning of the statutory language, since it is the statutory text which is the clearest indicator of legislative intent."[55]  Moreover, "a court cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the Legislature did not see fit to enact."[56]

Here, the plain language of Section 8-107, subd. 13(b), is inconsistent with the defense crafted by the Supreme Court in *Faragher* and *Ellerth*.  It creates vicarious liability for the acts of managerial and supervisory employees even where the employer has exercised reasonable care to prevent and correct any discriminatory actions and even where the aggrieved employee unreasonably has failed to take advantage of employer-offered corrective opportunities.  Likewise, it provides for employer liability for the discriminatory acts of co-workers in like circumstances provided only that a managerial or supervisory employee knew of and acquiesced in such conduct or should have known of what was going on and failed to take reasonable preventive measures. Given the lack of any substantial reason to believe that the New York Court of Appeals would not

---

[55]

*Janssen v. Incorp. Vill. of Rockville Centre,* ___ N.Y.S.2d ___, 2008 WL 5263770, at *9 (2d Dept. Dec. 16, 2008) (quoting *Ragucci v. Prof. Constr. Servs.,* 25 A.D.3d 43, 47, 803 N.Y.S.2d 139 (2d Dept. 2005) (in turn quoting *Majewski v. Broadalbin-Perth Cent. Sch. Dist.,* 91 N.Y.2d 577, 583, 673 N.Y.S.2d 966 (1998))) (internal quotation marks omitted).

[56]

*Chemical Specialties Mfrs. Ass'n v. Jorling,* 85 N.Y.2d 382, 394, 626 N.Y.S.2d 1, 7 (1995) (internal quotation marks omitted).

apply Section 8-107, subd. 13(b), as it is written and the mandate of the *Erie* doctrine, the Court

holds that *Faragher-Ellerth* does not apply in NYCHRL cases and therefore denies summary

judgment dismissing the sexual harassment claim against TNS.[57]

B.      *The Retaliation Claim*

Plaintiff claims that Pan covertly monitored her computer usage at work in retaliation

for her sexual harassment complaint to TNS.   TNS seeks summary judgment dismissing that claim

as against it.

Section 8-107, subd. 7, of the NYCHRL states in relevant part:

"It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter.  The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity. "

---

[57]

It remains open to TNS to challenge the sufficiency of plaintiff's evidence with respect to the elements necessary under § 8-107, subd. 13(b), to employer liability.

Plaintiff argues also that this result is supported by a 2005 amendment to § 8-130 of the NYCHRL, which expressed the intention of the City Council that the NYCHRL be construed broadly and independently of corresponding provisions of Title VII and the NYSHRL.  L.L. 85/2005 § 7.   That amendment is immaterial here, both because its effective date postdated the events at issue in this case and because it in any case would be unnecessary to the Court's conclusion that there are genuine issues of material fact that preclude summary judgment for TNS independent of the amendment.

The elements of retaliation therefore are (1) participation in a protected activity, (2) knowledge of the protected activity by a person to whom the NYCHRL applies, (3) action with respect to the plaintiff that would be reasonably likely to deter a person from engaging in protected activity, and (4) a causal connection between the protected activity and the deterrent action.[58]  TNS seeks summary judgment dismissing the retaliation claim against it on the grounds that plaintiff cannot establish either the third or the fourth elements of a *prima facie* claim of retaliation or that TNS is vicariously liable for Pan's actions.[59]

TNS has failed to establish a lack of genuine issues of material fact with respect to the third and fourth elements.  Viewing the evidence in the light most favorable to the plaintiff, a jury would be entitled to conclude that the monitoring even of at-work computer usage would be reasonably likely to deter an employee from reporting alleged sexual harassment and that there was a causal connection between Pan's actions and plaintiff's complaint.

TNS stands no better on the vicarious liability point.  Certainly its position is sympathetic.  Pan's activities were unauthorized and covert.  It had no reason to suspect his actions in this respect.  Yet there is evidence from which a jury could conclude that Pan was a supervisory or managerial employee.  Since Section 8-107, subd. 7, defines retaliation as a discriminatory practice, TNS is vicariously liable for any retaliation by Pan pursuant to Section 8-107, subd. 13(b)(1), assuming of course that *Faragher-Ellerth* does not apply under the NYCHRL.

---

[58]

    *See Cesar v. Highland Care Ctr., Inc.*, 37 A.D.3d 393, 394, 829 N.Y.S.2d 236, 238 (2d Dep't 2007).

[59]

    The last sentence quoted above was added by an amendment effective October 3, 2005. The only evidence of retaliation in the record appears to have occurred on August 5, 2005. TNS, however, did not argue that Pan's alleged actions did not constitute actionable retaliation under the law that was in effect at the time.  Therefore the Court does not reach this issue.

C.      *Certification for Interlocutory Appeal*

While the Court, in its view, is obliged to apply Section 8-107, subd. 13(b), as written, to the exclusion of *Faragher-Ellerth,* this conclusion is not free from doubt.  Indeed, the existence of the Second Circuit and other cases cited above for the proposition that *Faragher-Ellerth* does apply demonstrates that there is substantial ground for difference of opinion on the point.  Moreover, this is a controlling question of law, the resolution of which would materially advance the ultimate termination of this litigation, as application of *Faragher-Ellerth* here would result in dismissal of the action against TNS.  Accordingly, the prerequisites to certification of the question to the Court of Appeals exist.[60]

Interlocutory appeals of course should not be certified whenever the statutory prerequisites are satisfied.[61]  Our Circuit is sufficiently burdened with appeals from final judgments as to make the consideration of interlocutory appeals undesirable in the vast majority of circumstances.  Nevertheless, an exception should be made "for consideration [of a] case . . . of unusual significance, one in which a ruling is of practical importance going well beyond run-of-the-mill concerns of parties before the Court."[62]  This is such a case.

Employment discrimination cases make up substantial portions of the dockets of the district courts in our Circuit.  The apparent tendency to press claims under the state and city anti-discrimination laws, either in lieu of or in addition to claims under federal statutes, creates a genuine

---

[60]

     *See* 28 U.S.C. § 1292(b).

[61]

     *E.g., In re BISYS Secs. Litig.,* No. 04 Civ. 3840 (LAK), 2005 WL 3078482, at *1 (S.D.N.Y. Nov. 16, 2005);  *Romea v. Heiberger & Assocs.,* 988 F. Supp. 715, 717 (S.D.N.Y.), *aff'd without consideration of the point,* 163 F.3d 111 (2d Cir.1998).

[62]

     *In re BISYS Secs. Litig*., 2005 WL 3078482, at *1 (quoting *In re Auction Houses Antitrust Litig.,* 164 F.R.D. 345, 348 (S.D.N.Y.2001)) (internal quotation marks omitted).

19

need for resolution of the vicarious liability standards applicable to employers under those statutes. Accordingly, the Court will certify this question to the Court of Appeals.[63]

### III.    Conclusion

For the foregoing reasons, TNS's motion for summary judgment dismissing the complaint [docket item 99] is denied in all respects.  The Court hereby certifies to the Court of Appeals, pursuant to 28 U.S.C. § 1292(b), the following question: Does the affirmative defense to employer liability articulated in *Farragher v. City of Boca Raton*[64] and *Burlington Industries, Inc. v. Ellerth*[65] apply to sexual harassment and retaliation claims under New York City Administrative Section 8-107?

SO ORDERED.

Dated:          As of January 21, 2009
                January 26, 2009

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[63]
The Circuit in turn may see fit to certify this state law question to the New York Court of Appeals.

[64]
524 U.S. 775 (1998).

[65]
524 U.S. 742 (1998).

20